SONIA ORTIZ ORTIZ, apelante y recurrida, *v.* DEPARTA-
MENTO DE HACIENDA, apelado y peticionario.

*Número:* O-84-761     *Resuelto:* 23 de diciembre de 1987

*José Ramón Pérez Hernández*, abogado del peticionario; *Elsie Díaz Ortega*, abogada de la apelada (O.C.A.P.); *Carmen J. Díaz Padró*, abogada de la apelante recurrida.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

El 18 de agosto de 1980 la Lic. Sonia Ortiz Ortiz fue reclutada por el Departamento de Hacienda (en adelante Hacienda) como Subdirectora de la Oficina de Asuntos Legales de Hacienda, puesto clasificado como Abogado V. Al ser re-

clutada ocupaba el puesto de Asesor Legal III en el Departamento de Servicios Sociales y devengaba un sueldo de mil ochocientos cincuenta dólares ($1,850) mensuales. El sueldo básico para el puesto de Abogado V al momento del reclutamiento era de mil cuatrocientos ochenta dólares ($1,480) mensuales. Para poder reclutarla Hacienda solicitó a la Oficina Central de Administración de Personal (en adelante O.C.A.P.) un diferencial. en sueldo de cuatrocientos dólares ($400) mensuales, al amparo de la autoridad concedida por el Art. 7(1) de la Ley Núm. 89 de 12 de julio de 1979, Ley de Retribución Uniforme, 3 L.P.R.A. sec. 760f(1). En la solicitud se indicó que las cualificaciones especiales que se requerían para ocupar dicho puesto, especialmente en el área de supervisión, hacían sumamente difícil el reclutamiento. También se señaló que la licenciada Ortiz Ortiz poseía "todos los requisitos necesarios y condiciones deseables para el puesto".[1]

El 4 de septiembre O.C.A.P. aprobó el diferencial solicitado. En la notificación especificó que la autorización se daba a base de la "[d]ificultad extraordinaria en el reclutamiento" e hizo constar lo siguiente:

Este empleado podrá disfrutar de este diferencial *mientras prevalezcan las condiciones que dieron base a esta autorización.* Una vez desaparezcan las mismas, su sueldo se ajustará conforme a la reglamentación en vigor que le aplique. (Énfasis suplido.) Apéndice, pág. 3.

Luego de varios traslados,[2] el 20 de agosto de 1982 Hacienda notificó a la licenciada Ortiz Ortiz que efectivo el 1ro

[1] Del informe del oficial examinador de 27 de febrero de 1984, adoptado por la Junta de Apelaciones del Sistema de Administración de Personal (en adelante J.A.S.A.P.) surge que la única manera de lograr reclutar.a la licenciada Ortiz Ortiz era equiparándole el sueldo con el que devengaba al momento del reclutamiento.

[2] El 8 de octubre de 1981, a raíz de una reorganización de la Oficina de Asuntos Legales la licenciada Ortiz Ortiz fue trasladada a la División de Opiniones y Contratos en la cual tenía como jefe a uno de los abogados de menos antigüedad en Hacienda. El 3 de mayo de 1982 se le asignó por treinta (30) días a la

de septiembre de 1982 dejaría de disfrutar el diferencial en sueldo de cuatrocientos dólares ($400) mensuales. Adujo como fundamento que habían dejado de existir las condiciones que dieron base a la concesión del diferencial. De esta decisión la recurrida solicitó reconsideración y le fue denegada. El 13 de octubre de 1983 apeló ante J.A.S.A.P.

El 2 de mayo de 1984 J.A.S.A.P. emitió una resolución[3] en la cual determinó "que cuando se recluta a un empleado y se le otorga un diferencial en sueldo y . . . el mismo [es] aprobado por la O.C.A.P., el empleado así beneficiado adquiere un derecho propietario sobre dicho diferencial y del mismo no puede ser privado por razones ajenas al principio de mérito"; que para poder privar a la licenciada Ortiz Ortiz del diferencial la agencia apelada tenía que "probar que ya no [eran] necesarios los conocimientos y habilidades especiales que dieron [base a su] concesión", y que "las constantes reubicaciones de que [fue] objeto . . ., son demostrativas que, por razones ajenas al sistema de mérito, se le privó del diferencial". Apéndice, pág. 19. J.A.S.A.P. revocó la decisión de Hacienda, ordenó el pago retroactivo del diferencial en sueldo dejado de percibir y que se le asignasen a la recurrida "deberes y obligaciones acordes con las especificaciones de clase correspondientes a un Abogado V". Apéndice, pág. 19. De esta resolución Hacienda solicitó revisión ante el Tribunal Superior. El 14 de septiembre de 1984 el tribunal dictó sentencia denegatoria de la expedición del auto y dejó en vigor la orden de J.A.S.A.P.[4]

---

Corporación para la Administración de la Sindicatura del Banco Obrero. Esta designación, sin embargo, se prolongó hasta el 9 de septiembre de 1983, fecha en que se le trasladó a la Administración de la Lotería de Puerto Rico. La licenciada Ortiz Ortiz no cuestionó estos traslados.

[3] J.A.S.A.P. adoptó el informe del oficial examinador de 27 de febrero de 1984, que modificaba algunas de las recomendaciones.

[4] El tribunal de instancia determinó que aunque no necesariamente estaba de acuerdo con la expresión de J.A.S.A.P. de que la recurrida "adquirió un 'dere-

No conforme Hacienda presentó una petición de *certiorari* ante este Tribunal. Planteó la comisión de cuatro errores que van dirigidos a cuestionar la determinación del tribunal de instancia y de J.A.S.A.P. de que se continúe pagando el diferencial en sueldo, cuando ya no existe la razón por la cual éste se autorizó: dificultad extraordinaria en el reclutamiento. Decidimos revisar y expedimos el auto.

I

La Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975 (3 L.P.R.A. sec. 1301 *et seq.*) reafirmó el principio de mérito como norma rectora en la administración de personal y su extensión a todos los sectores del servicio público. *Reyes Coreano* v. *Director Ejecutivo*, 110 D.P.R. 40, 48 (1980). Esta ley "persigue alcanzar como meta los más altos niveles de excelencia, eficiencia y productividad en el servicio público". Entre sus objetivos está el "[l]ograr que la administración pública se rija por criterios de la *mayor uniformidad, equidad, y justicia*". (Énfasis suplido.) 3 L.P.R.A. sec. 1312(1). En 1979 fue enmendada con el propósito de corregir "fallas y omisiones" para poder "poner en práctica su contenido y alcanzar la uniformidad de su aplicación", al mismo tiempo que se incorporaron "nuevos conceptos y corrientes innovadoras en la administración de personal". Exposición de Motivos de la Ley Núm. 1 de 17 de julio de 1979, Leyes de Puerto Rico de 1979, págs. 947, 948. Reconociendo que el área de la retribución del empleado público es una de las más importantes "para lograr un sistema de administración de personal moderno y balanceado y para facilitar la aplicación del principio de mérito", en el 1979 también se aprobó la Ley de Retribu-

---

cho propietario' sobre el diferencial de sueldo, entend[ía] que no se justifica[ba su] intervención". Apéndice, pág. 53.

De esta sentencia Hacienda solicitó reconsideración, la cual fue denegada.

ción Uniforme, Ley Núm. 89 de 12 de julio de 1979 (3 L.P.R.A. sec. 760 *et seq.*). 1979 Leyes de Puerto Rico 224, 225. Su propósito es, en consonancia con el principio constitucional de igual paga por igual trabajo, establecer "un sistema de retribución que propicie la uniformidad, la equidad y la justicia en la fijación de los sueldos a todos los empleados del servicio público . . . [al mismo tiempo que se crean] mecanismos que propendan y *faciliten el reclutamiento* y retención de personal *mediante la concesión de incentivos adicionales*". (Énfasis suplido.) Exposición de Motivos, Ley de Retribución Uniforme, *supra*, pág. 226.

Compatible con estos principios, la Ley de Retribución Uniforme preceptúa como norma general que el empleado público, al ser nombrado, recibirá como sueldo el tipo mínimo de la correspondiente escala.[5] Sin embargo, a manera de excepción y para atender ciertas circunstancias y necesidades específicas del servicio público, O.C.A.P. tiene facultad para autorizar diferenciales en sueldo.[6] Estos diferenciales los puede conceder cuando la agencia solicitante prueba que son necesarios debido a "la ubicación geográfica del puesto, las condiciones extraordinarias de trabajo, los conocimientos especiales requeridos, o *las dificultades extraordinarias en el reclutamiento* y/o retención de personal para determinados puestos". (Énfasis suplido.) 3 L.P.R.A. sec. 1354(5)(a) y 3 L.P.R.A. sec. 760f(1). La propia ley establece la naturaleza excepcional y carácter temporero del di-

---

[5] Art. 7 de la Ley de Retribución Uniforme, 3 L.P.R.A. sec. 760f(1).

[6] El Art. 11(13) de la Ley de Retribución Uniforme, 3 L.P.R.A. sec. 760j(13), define "diferencial" así:

"Diferencial — Significará la compensación especial que se podrá conceder cuando la ubicación geográfica del puesto, las condiciones especiales del trabajo, los conocimientos especiales requeridos o las dificultades extraordinarias en el reclutamiento y/o retención de personal para ciertos puestos lo justifiquen. Será un diferencial también la compensación adicional que se conceda a un empleado mientras desempeña un puesto interinamente."

ferencial. Dispone que éste constituirá una compensación especial, adicional y separada del sueldo regular y se eliminará cuando desaparezcan las circunstancias que justificaron su concesión.

■ Siendo el principio de mérito eje central y principio cardinal de la política pública relacionada con el servicio público, toda concesión o eliminación de diferenciales en sueldo[7] tiene que hacerse de forma tal que no contravenga este principio. Con estas normas generales en mente pasemos ahora a considerar los hechos específicos de este caso.

## II

En el caso de autos a la recurrida se le otorgó un diferencial en sueldo debido a la dificultad extraordinaria para el reclutamiento que existía al momento en que fue reclutada y nombrada en Hacienda. Ella aceptó el puesto consciente de que dicho diferencial era de naturaleza temporera y que sería eliminado cuando las circunstancias que justificaron su concesión, la dificultad extraordinaria para el reclutamiento, desaparecieran. Aunque la recurrida no tenía un derecho propietario sobre dicho diferencial, sí tenía derecho a que su eliminación se rigiera por los principios de mérito y mediante la aplicación de criterios de equidad y justicia.

■ Luego de una serie de traslados, que J.A.S.A.P. clasificó como contrarios al principio de mérito, a la recurrida se le notificó que dejaría de disfrutar el diferencial en sueldo debido a que había desaparecido el fundamento para

---

(7) La concesión de sueldos diferenciales, así como la eliminación de los mismos se hará siguiendo las normas del reglamento adoptado a los fines de instrumentar las disposiciones de la Ley de Retribución Uniforme. Sin embargo, cabe señalar que aún no se ha aprobado un reglamento que disponga las normas específicas a aplicarse en relación con la concesión y eliminación de diferenciales en sueldo.

su concesión. O.C.A.P. adujo como prueba de esto el que el Registro para la Clase de Abogado V se encontraba "abarrotado" de candidatos que estaban disponibles para ocupar el puesto de la apelante. No surge del expediente que Hacienda hubiese efectuado un estudio para determinar si los candidatos que aparecían en el Registro para la Clase de Abogado V reunían las cualificaciones especiales que señalaron en la solicitud de diferencial que presentaron en relación con la recurrida. Tampoco surge que O.C.A.P. hubiese auscultado el efecto, si alguno, que los traslados que J.A.S.A.P. encontró contrarios al sistema de mérito, tuvieron sobre la determinación de Hacienda, de solicitar la eliminación del diferencial. Tanto el principio de mérito, como los criterios de equidad y justicia que permean y rigen la administración pública, requieren que toda determinación de que procede la eliminación de un diferencial en sueldo se haga a base de un estudio que efectivamente demuestre que las circunstancias que ameritaron su concesión han desaparecido. En los casos apropiados, también se deben ponderar los efectos negativos que sobre estas circunstancias puedan haber tenido actuaciones contrarias al sistema de mérito de la agencia que solicitó la eliminación. Permitir que actuaciones contrarias al sistema de mérito propicien las condiciones para que se eliminen las circunstancias que dieron base a la concesión de un diferencial en sueldo, con el efecto negativo y adverso que esto representa para el empleado público y el potencial de abuso que entraña, es contrario a los propósitos tanto de la Ley de Personal del Servicio Público de Puerto Rico como de la Ley de Retribución Uniforme. Tolerar tal situación desalentaría no sólo el reclutamiento, sino también la retención de los empleados públicos, socavando la meta que se persigue de alcanzar los más altos niveles de excelencia, eficacia y productividad en el servicio público.

Debido a que en este caso no se ha tenido el beneficio de un estudio de Hacienda que demuestre que al solicitar la eliminación del diferencial en sueldo no existía dificultad extraordinaria para el reclutamiento, y que tampoco se tuvo la oportunidad de ponderar cómo afectan los traslados "ajenos al principio de mérito" esta determinación, devolvemos el caso a J.A.S.A.P. para que se reciba esta prueba y haga las determinaciones que en derecho procedan.

Por todo lo antes expuesto, *se dictará sentencia en la que se revoca la del Tribunal Superior, Sala de San Juan, de 14 de septiembre de 1984 y se devuelve el caso a J.A.S.A.P. para que continúen los procedimientos de forma compatible con esta opinión.*

El Juez Asociado Señor Ortiz no intervino.